**Dated: October 14, 2022**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | |
| Petition of Andrew Paul Shimmin, as ) | Case No. 22-10039-JDL |
| Liquidator of Comfort Jet Aviation, Ltd., ) | Chapter 15 |
| ) | |
| Debtor in a Foreign Proceeding. ) | |

**ORDER ON PETITION FOR RECOGNITION OF
FOREIGN PROCEEDING**

**I. Introduction**

On August 30, 2022, there came on for evidentiary hearing before the Court the issues framed by the following pleadings:

1. *Chapter 15 Petition for Recognition of a Foreign Proceeding* filed by Andrew Paul Shimmin in his capacity as Liquidator ("Liquidator") and Foreign Representative of Comfort Jet Aviation Ltd. ("Comfort Jet") [Docs. 1 and 2];

2. *Objection of Dassault Falcon Jet - Wilmington Corp. ("DFJ") to Petition for Recognition of Foreign Proceeding* [Doc. 28];

3. *Objection by Kent Aviation, LLC ("Kent Aviation") to Petition for Recognition of Foreign Proceeding* [Doc. 29];

4. *Response to Objections to Petition for Recognition of Foreign Proceeding of Andrew Paul Shimmin, as Liquidator of Comfort Jet Aviation, Ltd.* [Doc. 41];

5. *Supplemental Brief by Kent Aviation LLC in Support of Objection to Petition for Recognition of Foreign Proceeding* [Doc. 83]; and

6. *Response to Supplemental Brief by Kent Aviation LLC in Support of Objection to Petition for Recognition of Foreign Proceeding of Andrew Paul Shimmin, As Liquidator of Comfort Jet Aviation, Ltd.* [Doc. 85].

Pursuant to Fed. R. Bankr. P. 7052 and 9014, the following constitutes the Court's Findings of Fact and Conclusions of Law.

## II. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(a), and venue is proper pursuant to 28 U.S.C. § 1409.  Reference to the Court of this matter is proper pursuant to 20 U.S.C. § 157(a). This is a core proceeding pertaining to the recognition of foreign proceedings and other matters under Chapter 15 of title 11 as provided by 28 U.S.C. § 157(b)(2)(P).

## III. Background

In the summer of 2018 Comfort Jet entered into certain agreements with Aeromanagenent, Inc. ("Aeromanagement") under which Aeromanagement was the listing agent and broker for Comfort Jet's sale of a 1987 Dassault Falcon 900 aircraft (the "Aircraft"). In accordance with the agreements between Comfort Jet and Aeromanagement,

Aeromanagement was also responsible for matters pertaining to registration of the Aircraft and to obtain the services of a company to conduct a C-Check[1] inspection of the Aircraft to make any repairs necessary. In September 2018, Comfort Jet, as Seller, and Kent Aviation, as Buyer, entered into an Aircraft Purchase Agreement for the sale of the Aircraft for the price of $1,500,000.

In accordance with the agreements between Comfort Jet and Aeromanagement, Aeromanagement retained the services of DFJ to conduct the C-Check and make any repairs to ensure that the Aircraft was airworthy. Over the next two years a dispute ensued between Comfort Jet, Aeromanagement and DFJ as to the extent and performance of the repairs. In June of 2020 the title company and escrow agent for the sale of the Aircraft which had been dispensing payments for repairs and services agreed to by the parties and was still holding $520,000 in escrow, filed an interpleader action in the District Court of Oklahoma County, Oklahoma, seeking a judicial determination as to who was entitled to the funds remaining in its possession. The action was thereafter removed to the United States District Court for the Western District of Oklahoma where it remains pending. Thereafter, Comfort Jet and DFJ filed answers and cross-claims against the other parties. Kent filed cross-claims asserting, among other claims, claims of breach of contract and fraud against Comfort Jet and DFJ. That court action remains pending with a demand for jury trial.[2]

---

[1] "C-Check" means the inspection, overhaul, repair, preservation and replacement of Parts of the Aircraft, including preventive maintenance, identified as a full block C-Check under the Airframe manufacturer's maintenance manuals and planning documents.

[2] The case was set for jury trial in April 2022. That date was stricken by the District Court pending the outcome of this Court's hearing on the Recognition of Foreign Proceeding originally

Comfort Jet is a limited liability company organized and existing under the laws of the Isle of Man ("IOM").[3] On October 1, 2021, pursuant to Section 226 of the Isle of Man Companies Act, in Douglas, IOM, the Petitioner was appointed Liquidator for Comfort Jet by an act of the Board of Directors of Comfort Jet and a vote of creditors.

On January 11, 2022, the Petitioner/Liquidator initiated this proceeding requesting that the Court recognize the liquidation proceeding which is currently pending in the IOM as a foreign main proceeding or, alternatively, a foreign nonmain proceeding, under Chapter 15 of the Bankruptcy Code.

## IV. Discussion

This Court's recognition of a foreign insolvency proceeding under § 1517 of Chapter

---

set for hearing on March 24, 2022. Unlike the filing of cases under Chapters 7, 11, 12, 13 and involuntary bankruptcies, the filing of a Petition under Chapter 15 does not impose the automatic stay under section 362(a).

[3] The IOM is nestled between England and Ireland in the Irish Sea. In area, it is slightly more than three times the size of Washington D.C.. The IOM has a strong identity partly due to its independence and the fact that the island is self-governing. It is an island nation and self-governing British Crown Dependency–as are the Bailiwicks of Jersey and Guernsey in the English Channel. The head of state is King Charles III, who holds the title of Lord of Man. It has the oldest continuous parliament in the world, Tynwald, which dates back more than 1,000 years. Visitors can tour the Tynwald building and visit Tynwald Hill, which is where Parliament meets in the open air once a year.

The IOM economy is known for its status as a tax haven and offshore banking destination. wikipedia.org/wiki/Isle_of_Man of Man (last visited 9/2/2022)

The IOM has its own insolvency laws and generally follows British common law precedent. It has not adopted a model law consistent with the United Nations Commission on International Trade Law (UNCITRAL). In the insolvency arena, the relevant model is known as the Model Law on Cross- Border Insolvency (the "Model Law"). It was adopted by the General Assembly of the United Nations in December 1997 and made available to member states. In the United States, the Model Law serves the foundation for Chapter 15 which was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), to "encourage cooperation between the United States and foreign countries with respect to transnational insolvency cases." H.R. Rep. No. 109-31(I) at 105 (2005).

15 of the Bankruptcy Code is dependent upon several statutory requirements.[4] The foreign representative has the ultimate burden of proof on the requirements for recognition. The three requirements, set forth in § 1517, are as follows:

> (a) Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—
>
> > (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
> >
> > (2) the foreign representative applying for recognition is a person or body; and
> >
> > (3) the petition meets the requirements of section 1515.

While DFJ, but not Kent, has challenged the Liquidator's satisfaction of the existence of a "foreign proceeding" under factor (1), the Court finds that the Liquidator has clearly met the requirements of there being a "foreign proceeding" and that he is a "foreign representative."

First, § 101(23) defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

The IOM proceeding is a collective proceeding governed by the IOM Companies Act of 1931 through which Comfort Jet's financial affairs will be wound up and its assets distributed to creditors.

---

[4] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

5

Next, there is no dispute that Petitioner, the Liquidator appointed under the laws of the IOM, applying for recognition, is a person or body pursuant to subparagraph (2) of § 1517. Section 101(24) defines "foreign representative" as:

> a person or body, including a person or body appointed on interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding

In turn, § 101(41) defines "person" to include an individual. The Liquidator, an individual, is a "person," and was appointed Liquidator by vote of creditors on October 1, 2021. [Shimmin Tr. Ex. 000071-74; Doc. 2]. The Liquidator thus meets the requirements of subsection (2) of § 1517.

To comply with subparagraph (3) of § 1517, the foreign representative must file a petition that meets the requirements of § 1515, which are as follows:

> (a) A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.
>
> (b) A petition for recognition shall be accompanied by—
>
>> (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
>>
>> (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
>>
>> (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.
>
> (c) A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

6

> (d) The documents referred to in paragraphs (1) and (2) of subsection (b) shall be translated into English. The court may require a translation into English of additional documents.

There is no challenge to the contents of the Petition, and the Court is entitled to presume that the documents submitted in support of the Petition are authentic. 11 U.S.C. § 1516(b). Thus, the Petition filed by Petitioner/ Liquidator herein meets the requirements of § 1515.

The final statutory requirement for recognition pursuant to § 1517(a)(1) is that the proceeding on the IOM be a "foreign main proceeding" or "foreign nonmain proceeding" within the definitions of § 1502. This is the issue in dispute. Pursuant to § 1502(4), a proceeding is defined as a "foreign main proceeding" if: (1) it is a "foreign proceeding;" and (2) it is "pending in the country where the debtor has the center of its main interests." Section 1502(5) defines a "foreign nonmain proceeding" as "a foreign proceeding, other than a foreign main proceeding, where the debtor has an establishment." As discussed above, there is no dispute that Comfort Jet's proceeding pending in the IOM constitutes a "foreign proceeding." The dispute is whether Comfort Jet has its "center of its main interests" on the island for this Court to recognize the proceeding as a "foreign main proceeding" and/or whether it has an "establishment" on the island to constitute a "foreign nonmain proceeding." In short, the Court has three options: (i) recognize the proceeding as a foreign main proceeding, (ii) recognize the proceeding as a foreign nonmain proceeding, or (iii) refuse recognition.

### A. Whether the Insolvency Proceedings on the Isle of Man are Entitled to Recognition as a "Foreign Main Proceeding."

Pursuant to Bankruptcy Code § 1502(4), the Court is directed to recognize the

foreign proceeding "as a foreign main proceeding if it is pending in the country where the debtor has its center of main interests ("COMI"). The location of the debtor's COMI is the sole criterion for qualifying as a foreign main proceeding. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund Ltd.*, 389 B.R. 325, 331-32 (S.D. N.Y. 2008). The party seeking recognition as a foreign main proceeding must prove by a preponderance of the evidence that the debtor's COMI is in the jurisdiction where the foreign main proceeding is pending. *In re Gerova Financial Group Ltd.*, 482 B.R. 86, 90-91 (Bankr. S.D. N.Y. 2012); *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D. N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D. N.Y. 2007); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126 (Bankr. S.D. N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D. N.Y. 2008).

Neither the Model Law nor Chapter 15 defines the term "COMI"; however § 1516(c) provides that, "[i]n the absence of evidence to the contrary, the debtor's registered office ... is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); *In re Pirogova*, 593 B.R. 402, 408 (Bankr. S.D. N.Y. 2018). There is no dispute that Comfort Jet's registered office is on the IOM, and thus there is a presumption that its COMI is there. This presumption, however, can be overcome. The COMI presumption is rebuttable where other factors suggest that the true COMI of a debtor lies elsewhere. *See, e.g.*, *Bear Stearns*, 389 B.R. at 335 (presumption that the place of the entity's registered office is its COMI "at no time relieves a petitioner of its burden or non-persuasion on the issue"); *In re Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 129 (Bankr. S.D. N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D. N.Y. 2008) (stating that "the COMI presumption may be overcome particularly in the case of a 'letterbox' company not carrying

8

out any business" in the country where its registered office is located) (citing *Bondi v. Bank of America, N.A. (In re Eurofood IFSC Ltd.)*, 2006 E.C.R. I–3813, p. I8–I9, ¶ 32, 2006 WL 1142304 (E.C.J. May 2, 2006); *In re ABC Learning Centres Limited*, 445 B.R. 318, 333 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3rd Cir. 2013); *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 51-54 (Bankr. S.D. N.Y. 2008) (concluding that the absence of objections to COMI were not binding; the court must make an independent determination of COMI).

Courts consider several factors to determine whether the COMI presumption has been overcome, including:

> (1) the location of the debtor's headquarters;
> (2) the location of those who actually manage the debtor;
> (3) the location of the debtor's primary assets;
> (4) the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and /or
> (5) the jurisdiction whose law would apply to most disputes.

*In re SPhinX, Ltd.*, 351 B.R. at 117 (the "*SPhinX* Factors").

These "[v]arious factors, singly or combined, could be relevant" to a COMI determination. *Id.* Furthermore, the five *SPhinX* Factors should not be applied "mechanically"; rather, "they should be viewed in light of Chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value." *Id.*; *See also Morning Mist Holdings Ltd v. Krys (In re Fairfield Sentry Ltd.),* 714 F.3d 127, 137 (2nd Cir. 2013) (warning against mechanical application by finding that "consideration of these specific factors is neither required nor

9

dispositive"). As noted in *SPhinX*, "because their money is ultimately at stake, one generally should defer ... to the creditors' acquiescence in or support of a proposed COMI."). 351 B.R. at 117. When a court considers the COMI factors, the protection of the creditor's interest is paramount. *Id.*; *In re Serviços de Petróleo Constellation S.A.,* 613 B.R. 497, 508 (Bankr. S.D. N.Y. 2020) ("Courts in the Second Circuit also look to the expectations of creditors with regard to the location of the debtor's COMI."); *In re Chiang*, 437 B.R. 397, 403 (Bankr. C.D. Cal. 2010), (explaining that "the location of the COMI is an objective determination based on the viewpoint of third parties (usually creditors.").

The *SPhinX* factors, in conjunction with the other considerations discussed above, are addressed below:

      1. **The Location of the Debtor's Headquarters.** Comfort Jet's registered address is located on the IOM, and hence, under § 1516(c) the IOM is presumed to be its COMI. However, Comfort Jet's address is the same as IQEQ, a worldwide corporate service company. This tends to indicate that the address is more in the nature of providing a "letter box" rather than indicating the transaction of real business. Similarly, as further proof of its pre-liquidation IOM COMI, the Liquidator introduced evidence that the Board of Directors, Sharon Dunn and James Ramsey, resided or were based on the IOM. [Shimmin Tr. Ex. 000071 and 000082]. On its face this militates in favor of a finding of Comfort Jet's COMI, but such is mitigated by evidence that the directors are employees of IQEQ, whose corporate and governance services includes acting as a registered office and providing directors. Shimmin testified that IQEQ was "the company service provider" for Comfort Jet.

There was also testimony by Shimmin that the business model of Comfort Jet was

to own aircraft which it leased to its affiliate, Comfort Jet Services Ltd., located in Togo (officially the Togolese Republic) in West Africa. The Court was handicapped in making findings regarding the Debtor's "headquarters" because Shimmin was not able to provide any detail as to Comfort Jet's operations or its actual management. Furthermore, the Liquidator did not present for testimony a representative of Comfort Jet who could have provided valuable information on the nature of Comfort Jet's operations and the exact nature of the business which was conducted on the IOM and elsewhere.[5] There was testimony by Mr. Shimmin that the actual principal of Comfort Jet and/or Comfort Jet Services, was Herve Dossou. Kent was unsuccessful in obtaining his deposition or the deposition of any designated representative of Comfort Jet pursuant to Fed. R. Civ. P. 30(b)(6). Comfort Jet's and the Liquidator's failure to produce a witness or any evidence in their possession regarding the nature of its operations, specifically with regard to matters pertaining to its COMI, entitles the Court to make the reasonable inference that the testimony or evidence would have been adverse to Comfort Jet's, and the Liquidator's

---

[5] In its objection, Kent attached several documents from websites with information about Comfort Jet, Comfort Jet Services Ltd., Mr. Dossou and the "tax haven" nature of business conducted on the IOM. Many of these documents were also included in Kent's Trial Exhibit Notebook submitted to the Court prior to trial. Unfortunately, at trial neither Kent nor DFJ offered any exhibits into evidence for this Court's consideration or asked the Court to take judicial notice of the documents. Even to be admissible these documents from websites require authentication under Fed. R. Evid. 901(a). *See e.g.*, *Phoenix Process Equipment Co. v. Capital Equipment & Trading Corporation,* 2022 WL 3094320, at *15 (W.D. Ky. 2022) (Generally,"[t]o authenticate printouts from a website, the party proffering the evidence must produce some statement or affidavit from someone with knowledge of the website ... for example a web master or someone else with personal knowledge[.]" Furthermore, these documents are not official public records as an exception to the rules of hearsay evidence which would permit the Court to take judicial notice on its own pursuant to Fed. R. Evid. 201. *Koenig v. USA Hockey, Inc*., 2010 WL 4783042, at *2 (S.D. Ohio 2010) ("One court has gone so far as to describe information available on private Internet websites as 'not remotely akin to the type of facts which may be appropriately judicially noticed.'") (citing *Ruiz v. Gap, Inc*., 540 F.Supp.2d 1121, 1124 (N.D. Cal. 2008)); *Gerritsen v. Warner Bros. Entertainment Inc.,* 112 F.Supp.3d 1011, 1030 (C.D. Cal. 2015).

position.

On balance, the Court finds that the factor of location of Comfort Jet's headquarters on the IOM for purposes of establishing its COMI to be neutral.

**2. The Location of Those Who Actually Manage the Debtor.** Mr. Shimmin testified and presented evidence that two of Comfort Jet's Board of Directors were residents of the IOM. It is also undisputed that they are both employees of IQEQ, a worldwide company that provides corporate services, including directors. The evidence presented showed that one of the Directors, Sharon Dunn, acted on behalf of "corporate director Kleino Limited." [Shimmin Tr. Ex. 000072]. There was no evidence as to the nature, function or composition of Kleino Limited.

When asked by opposing counsel at trial whether "IQEQ was an entity that was strictly hired to furnish the directors for Comfort Jet", he replied, " I believe so, yes." There was no evidence presented that these two individual Directors, employees of IQEQ, actually, independently managed or exercised control of Comfort Jet. In the absence of such evidence the Court finds that this factor weighs against a finding of the COMI on the IOM.

**3. The Location of the Debtor's Primary Assets.** Mr. Shimmin testified that at the time of the commencement of the liquidation proceedings Comfort Jet's bank account with the approximate balance of $610,000 was located in Geneva, Switzerland; approximately $516,000 claimed by Comfort Jet was on deposit in the Registry of the United States District Court for the Western District of Oklahoma as part of the litigation pending there between Comfort Jet, Kent, DFJ and others; the Dassault F900B Falcon Jet sold by Comfort Jet to Kent (but which Shimmin indicated Comfort Jet may still claim some

interest) is located in Delaware, United States; and an account receivable valued at over $6 million owed by an entity located in Cyprus. [Shimmin Tr. Ex. 000076]. Shimmin testified, and evidence further indicated, that Comfort Jet held a 49% interest in Comfort Jet Services Ltd., which was located in Togo. [Shimmin Tr. Ex. 000077]. There was no evidence that any asset of Comfort Jet potentially available for making a distribution to creditors was located on the IOM, prior to the Liquidator's appointment. This finding weighs heavily against Comfort Jet's COMI being located on the IOM.

**4. The Location of the Majority of the Debtors Creditors.** The evidence indicated that at the time the liquidation proceedings commenced on October 1, 2021, seven creditors had filed claims. Multimillion dollar claims were filed by Petrostream Limited and Eneray Limited. When asked at trial whether it was true that Petrostream was not located on the Isle of Man, Shimmin replied, "correct." When asked the same question with regard to Eneray, Shimmin replied, "I'm not sure to confirm that." The Debtor's list of creditors in its Statement of Affairs indicates the addresses for both Petrostream and Eneray is the address of IQEQ on the IOM, the same address as Comfort Jet. The person shown to be the contact for both Petrostream and Eneray is James Ramsey, the IQEQ employee that is also one of the two Directors of Comfort Jet. [Shimmin Tr. Ex. 000080].

The list of creditors also shows Samuel Dossou and Herve Dossou, both located in Monaco. One creditor is shown to be in France and another on the island of Malta. The Oklahoma attorneys for the Liquidator in the proceedings before this Court and for Comfort Jet in the Federal Court litigation are also creditors. Creditors Kent and DFJ are located in Midland, Texas and Wilmington, Delaware, respectively. The last remaining creditor is IQEQ located on the IOM. The location of the creditors factor weighs against the COMI

as being on the IOM.

**5. The Jurisdiction Whose Law Would Apply to Most Disputes.** There was no evidence introduced pertaining to the law of the conflict of laws, including the enforceability of choice of law provisions of a contract, of the IOM which might apply to the contractual rights of creditors.[6] The only choice of law provision applicable to the creditors of which the Court is aware is in the Aircraft Purchase Agreement between Comfort Jet and Kent which provides that the laws of the State of Oklahoma apply. There is thus no evidence of the law applicable to "most" disputes. The Court finds that this factor for determining COMI is neutral.

The Court therefore finds that the *SPhinX* Factors which are applicable weigh against a finding that Comfort Jet's COMI is on the IOM. The Court finds that Comfort Jet's proceeding on the IOM is not entitled to recognition as a foreign main proceeding in this Court.

### B. Whether the Insolvency Proceedings on the Isle of Man are Entitled to Recognition as a Foreign Nonmain Proceeding.

An alternative form of recognition is recognition as a foreign nonmain proceeding. Section 1517(b)(2) of the Bankruptcy Code provides that this Court may also recognize a foreign proceeding if it is a "nonmain proceeding." 11 U.S.C. §§ 1502(7) and 1517(a)(1).

---

[6] Fed. R. Civ. P. 44.1 entitled Determining Foreign Law provides: A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law. While the rule governing determining foreign law allows the court to independently research the foreign law at issue, the plain language of the rule does not impose a duty on the court to research foreign law where the parties have provided little to no guidance to the court. *Koshani v. Barton*, 374 F.Supp.3d 695, 710 (E.D.Tenn.2019).

Under the Bankruptcy Code, a foreign "nonmain proceeding" means a proceeding, other than a foreign main proceeding, where the debtor has "an establishment." *Id.* at § 1502(5). To be recognized as a nonmain proceeding, the foreign debtor must establish a degree of stable connections with the jurisdiction to constitute a nontransitory "establishment." 11 U.S.C. § 1502(2). As several commentators have explained:

> Before *Bear Stearns,* it seems fair to say that many practitioners believed—based on section 1515—that by making these two showings, the statutory requirements for commencing a valid and proper Chapter 15 proceeding had been met. *Bear Stearns* revealed, however, that when a foreign debtor commences a proceeding in a jurisdiction where it has no real "presence"—i.e., no nontransitory business activity—the foreign proceeding will not be recognized under Chapter 15, either as a "main" or "nonmain" proceeding. The "establishment" requirement for "nonmain" status requires, as a prerequisite for any relief under Chapter 15, a base level of connection between the foreign debtor and the foreign jurisdiction that prevents a debtor from commencing a case in a jurisdiction where it has nothing more than a mail-drop presence.

William H. Schrag, William C. Heuer, and Robert E. Cortes, *Cross-Border Insolvencies and Chapter 15: Recent U.S. Case Law Determining Whether a Foreign Proceeding Is "Main" or "Nonmain" or Neither,* 17 J. Bankr. L. & Practice 5 Art. 4 (Aug. 2008).

The burden of proof is on the party seeking recognition of a foreign nonmain proceeding to prove, by a preponderance of the evidence, that the debtor has an "establishment" in the jurisdiction where the foreign insolvency proceeding is pending. *See In re Millennium Global Emerging Credit Master Fund Ltd.*, 474 B.R. 88, 91 (S.D. N.Y. 2012); *see also In re Fairfield Sentry Ltd.*, 2011 WL 4357421, at *3 (S.D. N.Y. 2011). An "establishment," in turn, is defined as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). While the Bankruptcy Code does

not define the phrases "place of operations" and "nontransitory economic activity," emerging case law provides guidance for the Court with respect to these terms. For example, the bankruptcy court in *In re Creative Finance Ltd.*, 543 B.R. 498, 520 (Bankr. S.D. N.Y. 2016) held that "the terms 'operations' and 'economic activity' require a showing of a local effect on the marketplace, more than mere incorporation and record-keeping and more than just the maintenance of property."; *See also In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 85 (Bankr. S.D. N.Y. 2011), *aff'd* 474 B.R. 88 ( S.D. N.Y. 2012).

Among the factors that contribute to identifying an establishment include: "the economic impact of the debtor's operations on the market, the maintenance of a 'minimum level of organization' for a period of time, and the objective appearance to creditors whether the debtor has a local presence." *In re Modern Land (China) Co., Ltd.,* 641 B.R. 768, 784 (Bankr. S.D. N.Y. 2022) (citing *Millennium Global I*, 458 B.R. at 85. *See In re Creative Financial, Ltd.,* 543 B.R. 498, 520 (Bankr. S.D. N.Y. 2016) (citing *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 (Bankr. S.D. N.Y. 2007)) (finding that an "establishment" requires a "showing of a local effect on the marketplace, more than mere incorporation and record-keeping and more than just the maintenance of property."). "This is evidenced by engagement of 'local counsel and commitment of capital to local banks.'" *Millennium Global I*, 458 B.R. at 86–87. *See also Lavie v. Ran (In re Ran*), 607 F.3d 1017, 1028 (5th Cir. 2010).

It may well be that Comfort Jet's incorporation and related registration activities on the IOM, in conjunction with other similarly situated business entities, could be shown to have a significant market impact on the Isle. The court, however, cannot speculate on

16

what the evidence could show. Like much of the other issues relevant to this case, there was a dearth of evidence produced by all parties, but the burden was on the Liquidator seeking recognition to establish the requisite showing. This is particularly true where the objectors produced enough evidence to rebut the presumption that registration itself was sufficient to constitute Comfort Jet's COMI or that Comfort Jet had an "establishment" on the Isle. While Mr. Shimmen was a credible witness, he knew very little about the actual management and operations of Comfort Jet. One would have anticipated that Comfort Jet would have produced a more informed witness, perhaps Mr. Dossou, to advocate its position that the company met either the *SPhinX* Factors to determine its COMI or that its "establishment" was on the IOM. The Court finds that the failure of the Liquidator to produce evidence that Comfort Jet has sufficiently engaged the local economy on the IOM to constitute an "establishment" precludes the Debtor from a foreign nonmain classification.

### C. Whether the Isle of Man Proceeding is Manifestly Contrary to the Public Policy of the United States.

Bankruptcy Code § 1506 provides that the Court can refuse to recognize a foreign proceeding "if the action would be manifestly contrary to the public policy of the United States." Courts agree that the public policy exception § 1506 is to be narrowly construed and should be invoked only under exceptional circumstances concerning matters of fundamental importance for the United States. *In re ABC Learning Centres, Ltd.*, 728 F.3d 301, 309 (3rd Cir. 2013) ("The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States.") (quoting H.R. Rep. No. 109-31(1), at 109 (2005) *reprinted* in U.S.C.C.A.N. 88, 172); *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 139 (2nd Cir. 2013); *In re Ran*, 607 F.3d 1017,1021 (5th Cir. 2010); *In re*

*Black Gold S.A.R.L.*, 635 B.R. 517, 528 (9th Cir. BAP 2022). Some courts have held that even the absence of certain procedural or constitutional rights will not itself be a bar under § 1506. *See Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro S.A.B. de C.V.)*, 701 F.3d 1031, 1069 (5th Cir. 2012) (citing *In re RSM Richter Inc. v. Aguilar (In re Ephedra Products Liability Litigation)*, 349 B.R. 333, 336 (S.D. N.Y. 2006) ("[F]ederal courts have enforced against U.S. citizens foreign judgments rendered by foreign courts for whom the very idea of a jury trial is foreign.")). Likewise, a difference in foreign law and U.S. law does not mean that recognition would be manifestly contrary to U.S. public policy. *Black Gold S.A.R.L.,* 635 B.R. at 528 (referencing the Guide[7] at ¶ 30 (differences in insolvency schemes do not, without more, justify a finding that enforcing one State's laws would violate the public policy of another State); *In re Manley Toys Ltd.,* 580 B.R. 632, 650 (Bankr. D. N.J. 2018) (citing *In re Toft,* 453 B.R. 186, 198 (Bankr. S.D. N.Y. 2011).

Kent contends that there are at least three aspects of the IOM proceedings that are violative of United States public policy: (1) it appears that at least two of the largest, and possibly more, creditors are insiders, and Kent argues that there is no mechanism for equitable subordination of insider claims under IOM law; (2) there is an impermissible conflict of interest under the Bankruptcy Code where the Oklahoma attorneys which are creditors of Comfort Jet continue to represent *both* Debtor Comfort Jet and the Liquidator; and (3) approximately $200,000 in fees have already been paid to the Liquidator and the

---

[7] Chapter 15 incorporates into U.S. bankruptcy law the Model Law on Cross-Border Insolvency (the "Model Law"), promulgated in 1997 by the United Nations Commission on International Trade Law. Congress has specifically pointed to the Guide to Enactment of the UNCITRAL Model Law (the "Guide") as providing historical and interpretive guidance to the meaning and purpose of the provisions in chapter 15. *See* H.R. Rep. No. 109-31(I) at 106 n.101, *as reprinted in* 2005 U.S.C.C.A.N. 169 n. 101.

Oklahoma attorneys without notice to the creditors.[8]  Are these differences between the permissible under IOM insolvency law and impermissible Bankruptcy Code so "manifestly" or "fundamentally" different as to violate United States public policy?  The Court need not, and does not, reach that determination.  Having found that the foreign proceeding is not entitled to recognition as either a main or nonmain proceeding, the Court need not determine if there is an exception to recognition under § 1506.

### D. Whether Kent and DFJ Waived Any Objection to Recognition of the Foreign Proceeding by Filing Claims and Voting in Favor of Putting Comfort Jet in Insolvency.

On October 1, 2021, in a meeting of creditors on the IOM, Kent and DFJ joined all other creditors being present in voting in favor of Comfort Jet being placed into a Creditors Voluntary Liquidation and appointing Shimmin as Liquidator. [Shimmin Tr. Ex. 000072-74]. There was no testimony or evidence presented at trial as to Kent and DFJ's motives for participating in the foreign proceeding.  Presumably, it was to protect their interests in sharing in any distributions which might be made in the liquidation on the IOM.  The Court cannot infer that Kent and/or DFJ's participation in those proceedings waived their substantive, statutory rights as creditors to participate in and challenge the ancillary, but entirely separate, proceedings in the United States.  For example, the filing of the insolvency proceedings on the IOM did not implicate the automatic stay under § 362, and the Court cannot infer that Kent and DFJ were waiving their right to pursue the litigation in Oklahoma to determine the amount of their debt against Comfort Jet, including the

---

[8] In addition to the public policy argument under § 1506, Kent also argues that these facts run afoul of one of the stated purposes of Chapter 15 that cross-border insolvencies "protects the interests of all creditors..." § 1501.

assertion of any lien rights against the aircraft located in the United States, by filing claims in the foreign proceeding. Furthermore, even if Kent and/or DFJ waived their right to object, which the Court finds they did not, "recognition under § 1517 is not to be rubber stamped by the courts" and the "Court must make an independent determination as to whether the foreign proceeding meets the definitional requirements of sections 1502 and 1517 of the Bankruptcy Code." *Bear Stearns,* 374 B.R. at 126.

## Conclusion

For the reasons set forth above, the Court finds that insolvency proceedings on the Isle of Man are not to be accorded recognition either as a main or nonmain proceeding under Chapter 15 of the Bankruptcy Code, and the *Petition for Recognition of a Foreign Proceeding* filed by Andrew Paul Shimmin in his capacity as Liquidator and Foreign Representative of Comfort Jet Aviation, Ltd. [Docs. 1 and 2] is hereby **Denied.**

# # #